UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

STEPHANIE PEREZ,

        Plaintiff,

-against-

THE CITY OF NEW YORK and
JOSEPH KOSEK,

        Defendants.

------------------------------------------------------------x

No. 21 Civ. 2250

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Stephanie Perez, by and through her attorneys, Cuti Hecker Wang LLP, for her Complaint alleges as follows:

## INTRODUCTION

1. This case is about extreme sexual harassment by New York City Police Department ("NYPD") Sergeant Joseph Kosek that is shocking even by contemporary standards.

2. For more than two years, Sergeant Kosek subjected Plaintiff to a daily onslaught of extremely demeaning sexualized attacks. He drew an erect penis on a photograph of her pointed at her mouth. He routinely made vulgar comments to her about women's intimate body parts. He watched and commented on pornography in the workplace. He boasted about sleeping with and shared nude images of a co-worker. He announced to a room full of fellow officers at a holiday party that he wished he had gotten her a "double-sided dildo" so that she could "scissor" one of her female colleagues. This was apparently acceptable workplace behavior at the NYPD.

3. Like so many women faced with a supervisor who openly objectifies and demeans women this way, Plaintiff tried her very best both to make clear to Kosek that these comments

were offensive and unacceptable to her, while also focusing as much as she could on her work and prove her value to the Department by being the best officer she could be.

4. But Sergeant Kosek would not accept her refusal to participate. He violated her even further. He surreptitiously and unlawfully obtained nude images of Plaintiff and, without her knowledge or consent, transmitted and/or showed them to others, including, upon information and belief, a number of her co-workers and other New York City Police Department Sergeants.

5. Plaintiff only learned of Kosek's horrific behavior because a brave colleague finally told her. She was shocked and horrified. Even then, she tried to put her faith in the system, hoping that the NYPD's internal Equal Employment Opportunity Division ("EEO") would treat her reports of Kosek's unlawful behavior seriously and expeditiously. Instead, her complaints have been treated with derision and as if it is somehow her fault that Kosek did this to her. Key evidence has been lackadaisically pursued, if at all. Months after she made her EEO complaint, she has heard nothing from the "investigators."

6. Plaintiff has suffered profoundly, feeling enormous anxiety and distress, while trying still to perform her duties to the best of her ability without knowing who has seen her private photographs or whom to trust at work. Defendants must be held accountable.

## PARTIES

7. Plaintiff Stephanie Perez is a natural person who resides in Queens, New York.

8. Defendant the City of New York (the "City") was and is a municipality that is a political subdivision of the State of New York. At all times relevant hereto, the City, acting through its agency, the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was

responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants referenced herein. In addition, at all relevant times, the City was responsible for enforcing all applicable workplace laws, rules, and regulations.

9. Defendant Joseph Kosek is a natural person who upon information and belief lives in Nassau County. At all relevant times, Defendant Kosek was an employee of the City serving as a Sergeant in the 79th Precinct.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

11. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## JURY DEMAND

12. Plaintiff hereby demands a trial by jury.

## FACTUAL ALLEGATIONS

13. Plaintiff Stephanie Perez is 31 years old.

14. Plaintiff holds a Bachelor of Arts degree from City College.

15. After college, Plaintiff worked for the American Society for the Prevention of Cruelty to Animals ("ASPCA") for several years because she loves animals.

16. She soon realized that she wanted to be a police officer, hoping one day to be able to become a detective, rooting out criminals and bringing them to justice.

17. Plaintiff attended the NYPD Police Academy in or about January 2016 and graduated in or about July 2016.

18. Officer Perez was assigned to the 79th Precinct as a Patrol Officer.

19.     In or about 2017, Officer Perez joined the so-called "target team" and began rotating between regular patrol and target team duties. When Officer Perez was performing target team duties, Sergeant Kosek was her direct supervisor.

20.     Sergeant Kosek is not an equal opportunity employer. Rather, he creates, cultivates, and thrives upon an extremely misogynistic workplace culture in which women routinely are disrespected and demeaned because of their gender.

21.     On or about April 4, 2019, for example, when Officer Perez was performing her duties at her desk at the 79th Precinct, Sergeant Kosek took a photograph of Officer Perez when she was not looking, superimposed on the photograph a drawing of an erect penis pointed toward her mouth, and sent the image to both Officer Perez and, upon information and belief, a NYPD Captain.

22.     The following is the image that Sergeant Kosek created and sent to Officer Perez and the NYPD Captain:



[1]

23. Officer Perez immediately confronted and complained to Sergeant Kosek, telling him pointedly that she would not tolerate such inappropriate behavior.

24. Sergeant Kosek responded by telling Officer Perez that it was just a joke.

25. It was clear to Officer Perez that Sergeant Kosek delighted in demeaning her in this manner.

---

[1] Because Officer Perez is a Field Intelligence Officer, her face has been redacted from this photograph to protect her identity.

26. Officer Perez was determined not to let Sergeant Kosek prevent her from doing what she joined the NYPD to do: work hard, serve and protect the community, and do things the right way.

27. But this incident left her shaken and concerned that she might not ever be able to achieve her full potential given the culture of rampant discrimination and sexual harassment at the NYPD.

28. As set forth above, Officer Perez aspired to become a detective.

29. Officer Perez also was interested in intelligence work.

30. Until sometime in 2019, Field Intelligence Officer positions were not detective-track positions.

31. Because Officer Perez aspired to become a detective, she did not apply for any positions in the Intelligence Bureau before late 2019.

32. In or about the middle of 2019, the rule changed, and Field Intelligence Officer positions became detective-track positions.

33. This made Officer Perez interested in applying for a Field Intelligence Officer position.

34. In or about the fall of 2019, Officer Perez expressed to Kosek her interest in applying for a Field Intelligence Officer position.

35. Officer Perez believed that after she had made clear to Sergeant Kosek that the incident in April 2019 was unacceptable, he would understand that he needed to treat her fairly.

36. Kosek appeared to want to help Officer Perez. He told her he would help her by introducing her to the head of the Field Intelligence section that she would be applying to, Captain Wilson Ortiz.

37. Kosek suggested that Officer Perez join him to go visit Captain Ortiz in Queens. She agreed.

38. During that meeting, Officer Perez expressed interest in the Intelligence Bureau to Captain Ortiz.  Captain Ortiz mentioned his children and then asked Officer Perez how her father would feel if she dated a man with children.  Officer Perez was taken aback by the question, but again, did her best to just make light of it and move on, focusing on making clear that she was willing to work hard.

39. In or about November 2019, Officer Perez interviewed for a Field Intelligence Officer position.  The interview was with Captain Ortiz, who oversees all Field Intelligence Officers in Brooklyn North, and two other high-ranking officers.

40. Officer Perez thought the Field Intelligence Officer interview went well and was hopeful that she would be offered the position.

41. Shortly after the interview, on or about November 19, 2019, Captain Ortiz texted Officer Perez on her personal phone.  She was uncomfortable that he was texting her on her personal phone, so she did not respond.

42. Captain Ortiz was not deterred.  He then sent her a text to her official NYPD phone and asked her out on a date.

43. Captain Ortiz wrote in the text that he heard that Officer Perez was "doing well" at the 79th Precinct and that she should "keep it up," and then he asked her whether she was "free for dinner":



44.     Officer Perez was shocked, appalled, and frightened.  She could not believe that the person she was hoping would become her supervisor's supervisor was coming on to her, and she feared that if she said no to him, she would not get the Field Intelligence Officer job.  She began to cry when she read Captain Ortiz's text.

45.     Officer Perez refused to compromise her principles and wrote back to Captain Ortiz: "I appreciate the offer, but I don't like to mix my professional life with my personal life."

46.     Officer Perez was offered the position after all and became a Field Intelligence Officer in December 2019.  She remained assigned to the 79th Precinct.

47.      Sergeant Kosek, who also was assigned to the Intelligence Bureau, became Officer Perez's direct supervisor.

48. In mid or late December 2019, there was a "secret Santa" exchange at the 79th Precinct. Each officer drew the name of another officer to buy a gift for. Sergeant Kosek drew Officer Perez. He bought her a gift card to Ulta, a makeup store.

49. When Officer Perez opened the envelope containing the gift card at the "secret Santa" party, Sergeant Kosek yelled loudly, in front of all present, that he had wanted to get her a "double-sided dildo" so that she could "scissor" with another female officer.

50. Officer Perez was shocked. She responded by saying "what?"

51. Sergeant Kosek then loudly repeated, once again in front of all present, that he had wanted to get her a "double-sided dildo" so that she could "scissor" with another female officer.

52. Horrified and humiliated, Officer Perez began to cry and immediately left the party.

53. There are myriad other examples of Sergeant Kosek creating, cultivating, and thriving upon an extremely misogynistic workplace culture in which he routinely made sexualized noises and comments and objectified women.

54. Sergeant Kosek routinely watched pornography at the 79th Precinct, turning up the volume so that Officer Perez and others could not avoid hearing the pornography, and making comments like "wow, that girl is flexible." He was open and flagrant in his pornography consumption, often turning the screen to show the images to others and laughing while doing so.

55. Starting in 2020, Sergeant Kosek repeatedly boasted at the 79th Precinct that he had a video of the sister of his wife, Danielle, performing oral sex on a man. He repeatedly showed this video to various other male officers at the 79th Precinct, yelling loudly, in the presence of Officer Perez, things like "Danielle's sister really knows how to suck dick."

56. On one occasion in 2020, Sergeant Kosek showed Officer Perez a photograph of a naked woman's body on his phone. Sergeant Kosek bragged that this was a photograph of another female officer and that he had had sex with her.

57. Sergeant Kosek routinely made comments to Officer Perez and others about the bodies of female officers, saying to Officer Perez and others things like "she has beautiful tits" or "I bet she has a great pussy" or "I wonder what her pussy tastes like."

58. Sergeant Kosek routinely made comments in the workplace about his sex life with his wife, Danielle. He routinely said things to Officer Perez and others like "Danielle keeps begging me to have sex with her" or "when I got home last night, Danielle just ripped my pants off and started sucking my dick."

59. Sergeant Kosek routinely made comments in the workplace to Officer Perez and others about his extramarital sexual encounters, saying things like "the girl I fucked last night had such a tight pussy, it looked like a coin slot."

60. Sergeant Kosek routinely made sexual noises, such as grunts and groans, in the workplace.

61. The hostile work environment that Sergeant Kosek created in Officer Perez's presence was relentless. These incidents occurred on a daily basis, typically multiple times per day.

62. Meanwhile, part of Officer Perez's job as a Field Intelligence Officer was to monitor the social media use of various subjects in the community.

63. Officer Perez therefore maintained two Snapchat accounts – a personal account associated with her identity that she used only for personal purposes, and a second account associated with an alias that she used only for work purposes.

64. Snapchat is a multi-media messaging application that enables users to share messages, photos, and videos that can be directed privately to selected contacts, or to semi-public or public fora called "stories."

65. Snapchat enables users to store photos, videos, and images in a password-protected location called "my eyes only."

66. Officer Perez stored photos and videos of various things in the "my eyes only" area of her personal Snapchat account, including photos of her live-in boyfriend, her nephews, and animals. Officer Perez likes to experiment with Snapchat's "filters" features to manipulate photos.

67. Officer Perez also occasionally took "selfies" of herself in her underwear or nude, which were only intended to be seen by herself.

68. Officer Perez never transmitted or otherwise shared any images of herself in her underwear or nude with anyone.

69. Officer Perez believed that all of the images of her in her underwear or nude were stored in the "my eyes only" area of her personal Snapchat account, and none was stored in the Snapchat account that she used for work purposes.

70. At all relevant times, Sergeant Kosek was aware that Officer Perez maintained a Snapchat account that she used for work purposes to interact through an alias with various subjects in the community.

71. On or about February 20, 2020, Officer Perez was about to leave on a vacation to visit her parents in Guatemala, and Sergeant Kosek asked her if he could use her work Snapchat account while she was away. Sergeant Kosek assured Officer Perez that he would only use it for work purposes and expressly promised her that he would not share her password with anyone.

72. Mindful that Sergeant Kosek was her direct supervisor, Officer Perez provided him with the username and password for her work Snapchat account, believing that all of her personal photos were segregated in her separate personal Snapchat account.

73. Although Officer Perez did not find out until months later, Sergeant Kosek apparently was somehow able to use the user name and password for Officer Perez's work Snapchat account to access the personal photos that were segregated in the "my eyes only" storage area of her separate personal Snapchat account.

74. Sergeant Kosek knew that Officer Perez was unaware that he had access to images of her in her underwear and nude.

75. Sergeant Kosek knew that Officer Perez had not authorized him to view or disseminate images of her in her underwear and nude.

76. Shortly after Sergeant Kosek obtained access to images of Officer Perez in her underwear and nude, he began to transmit and/or show these images to others, including other male NYPD officers and/or Sergeants, without Officer Perez's knowledge or authorization.

77. These included at least one image of Officer Perez's buttocks and at least one image of Officer Perez's breast.

78. Upon information and belief, Sergeant Kosek transmitted or showed these nude images of Officer Perez to other NYPD officers and/or Sergeants who knew that Sergeant Kosek had done so without Officer Perez's knowledge or authorization.

79. Upon information and belief, Sergeant Kosek transmitted or showed these nude images of Officer Perez to others without Officer Perez's knowledge or authorization for a period of many months before Officer Perez found out.

80. In or about December 2020, a sympathetic fellow officer confronted Officer Perez and informed her that Sergeant Kosek had just showed him nude images of her.

81. This fellow officer told Officer Perez that she was identifiable in the nude images, and he accurately described a tattoo that she has on one of her buttocks, which he never would have known about or seen.

82. This fellow officer told Officer Perez that when he asked Sergeant Kosek how Sergeant Kosek had obtained nude images of her, Sergeant Kosek told the fellow officer that he had obtained Officer Perez's Snapchat password.

83. Officer Perez was in shock. She did not know how to process what she had just learned.

84. Officer Perez was terrified to report Sergeant Kosek's unlawful behavior. She already faced the daunting daily challenge of trying to work hard and excel as a woman in the quintessential man's world, and she knew that if she reported a fellow officer for engaging in misconduct, she would have even more of a target on her back.

85. But Officer Perez felt that she had no choice because she could not possibly stand another day of working with Sergeant Kosek, nor could she allow him to get away with his gross violation of her rights. She therefore reported his unlawful behavior to the NYPD.

86. The EEO officers who were assigned to investigate her complaint were accusatory in tone, effectively communicating to Plaintiff that she should not be pursuing her complaint against a fellow officer.

87. When Plaintiff reported the harassment, hostile environment, and retaliation to the EEO officers, she felt that the EEO officers were suggesting that she somehow was at fault, which made her very uncomfortable.

88. The EEO officers who were assigned to investigate her complaint have failed to conduct an adequate or expeditious investigation.

89. More than three months after Officer Perez formally reported Kosek's shocking misconduct to EEO, she has not been informed of the results or disposition of the investigation.

## FIRST CAUSE OF ACTION
### Sexual Harassment in Violation of New York City Human Rights Law § 8-502(a)

90. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

91. Plaintiff was employed by the City.

92. Defendant Kosek was Plaintiff's direct supervisor.

93. When Defendant Kosek engaged in the acts and practices described above, he caused Plaintiff's workplace to become permeated with discriminatory intimidation, ridicule, and insult.

94. Such discriminatory intimidation, ridicule, and insult served to alter the terms and conditions of Plaintiff's employment.

95. Such discriminatory intimidation, ridicule, and insult created an abusive working environment.

96. By engaging in the acts and practices described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, including by creating a hostile work environment because of her sex, in violation of the New York City Human Rights Law.

97. The City is liable for these New York City Human Rights Law violations as Plaintiff's employer.

98. Defendant Kosek is liable for these New York City Human Rights Law violations both as Plaintiff's employer and because he personally discriminated against Plaintiff and personally created the hostile work environment described above.

99. As a direct and proximate result of Defendants' unlawful conduct in violation of the New York City Human Rights Law, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of monetary damages.

100. Defendants engaged in the acts and practices described above with reckless indifference to and callous disregard for Plaintiff's rights under the New York City Human Rights Law.

101. Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of the New York City Human Rights Law, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CAUSE OF ACTION**
**Sexual Harassment in Violation of 42 U.S.C. § 1983**

102. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

103. When Kosek engaged in the acts and practices described above, he was acting under color of state law.

104. When Kosek engaged in the acts and practices described above, he caused Plaintiff's workplace to become permeated with discriminatory intimidation, ridicule, and insult.

105. Such discriminatory intimidation, ridicule, and insult was sufficiently severe and/or pervasive to alter the conditions of Plaintiff's employment.

106. Such discriminatory intimidation, ridicule, and insult created an abusive working environment.

107. When Kosek engaged in the acts and practices described above, he discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, including creating a hostile work environment based on her sex, thus depriving Plaintiff of her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

108. Kosek engaged in the acts and practices described above with reckless indifference to and callous disregard for Plaintiff's federally protected rights.

109. As a direct and proximate result of Kosek's unlawful conduct in violation of 42 U.S.C. § 1983, Plaintiff has suffered and continues to suffer emotional harm, including mental anguish, emotional distress, and humiliation.

### THIRD CAUSE OF ACTION
### Violation of New York Civil Rights Law § 52-B

110. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

111. Defendant Kosek accessed Plaintiff's Snapchat account and, without Plaintiff's knowledge or authorization, obtained intimate images of Plaintiff.

112. Such intimate images depicted exposed and/or unclothed intimate body parts of Plaintiff.

113. Plaintiff reasonably expected that such intimate images would remain private.

114. Plaintiff was identifiable in such intimate images.

115. Defendant Kosek disseminated and published such intimate images to others, including Plaintiff's co-workers, without Plaintiff's knowledge or consent.

116. Defendant Kosek's intent in disseminating and publishing such intimate images was to harass, annoy, alarm, and humiliate Plaintiff.

117. As a direct and proximate result of Kosek's unlawful conduct in violation of New York Civil Rights Law § 52-B, Plaintiff has suffered and continues to suffer emotional harm, including mental anguish, emotional distress, and humiliation.

118. Defendant Kosek's violations of New York Civil Rights Law § 52-B were malicious, willful, wanton, and outrageous, entitling Plaintiff to an award of punitive damages.

119. Defendant Kosek should be ordered to account for all of the intimate images of Plaintiff that he directly or indirectly caused to be disseminated.

120. Defendant Kosek should be ordered to destroy all of the intimate images of Plaintiff that are in his actual or constructive possession, custody, or control.

121. Defendant Kosek should be temporarily and permanently enjoined from further disseminating or publishing any intimate images of Plaintiff.

### FOURTH CAUSE OF ACTION
### Violation of New York City Administrative Code § 10-180

122. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

123. Defendant Kosek accessed Plaintiff's Snapchat account and, without Plaintiff's knowledge or authorization, obtained intimate images of Plaintiff.

124. Such intimate images depicted exposed and/or unclothed intimate body parts of Plaintiff.

125. Plaintiff reasonably expected that such intimate images would remain private.

126. Plaintiff was identifiable in such intimate images.

127. Defendant Kosek disseminated and published such intimate images to others, including Plaintiff's co-workers, without Plaintiff's knowledge or consent.

128. Defendant Kosek's intent in disseminating and publishing such intimate images was to harass, annoy, alarm, and humiliate Plaintiff.

129. As a direct and proximate result of Kosek's unlawful conduct in violation of New York City Administrative Code § 10-180, Plaintiff has suffered and continues to suffer emotional harm, including mental anguish, emotional distress, and humiliation.

130. Defendant Kosek's violations of New York City Administrative Code § 10-180 were malicious, willful, wanton, and outrageous, entitling Plaintiff to an award of punitive damages.

131. Defendant Kosek should be ordered to account for all of the intimate images of Plaintiff that he directly or indirectly caused to be disseminated.

132. Defendant Kosek should be ordered to destroy all of the intimate images of Plaintiff that are in his actual or constructive possession, custody, or control.

133. Defendant Kosek should be temporarily and permanently enjoined from further disseminating or publishing any intimate images of Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

    a.    Declaring that Defendants subjected Plaintiff to a hostile work environment in violation of the New York City Human Rights Law;

    b.    Declaring that Defendant Kosek subjected Plaintiff to a hostile work environment in violation of the Equal Protection Cause of the Fourteenth Amendment;

Case 1:21-cv-02250-FB-CLP Document 1 Filed 04/23/21 Page 19 of 19 PageID #: 19

c. Declaring that Defendants accessed, disseminated, and published Plaintiff's intimate images in violation of New York Civil Rights Law § 52-B and New York City Administrative Code § 10-180;

d. Awarding compensatory damages;

e. Awarding punitive and/or exemplary damages;

f. Ordering Defendant Kosek to account for all of the intimate images of Plaintiff that he directly or indirectly caused to be disseminated and to destroy all of the intimate images of Plaintiff that are in his actual or constructive possession, custody, or control;

g. Enjoining Defendant Kosek from further disseminating or publishing any intimate images of Plaintiff;

h. Awarding attorneys' fees and costs;

i. Awarding pre-and post- judgment interest; and

f. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 23, 2021

CUTI HECKER WANG LLP

By: s/Mariann Meier Wang
    Mariann Meier Wang
    Eric Hecker
    Heather Gregorio

305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600
mwang@chwllp.com
ehecker@chwllp.com
hgregorio@chwllp.com

*Attorneys for Plaintiff*

19